IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| BARBARA HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-G-0493-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Barbara Harris, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

> (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Earl C. Cates, Jr., determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment. In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform light work. [R. 24]. Accordingly, the ALJ found the Plaintiff not to be disabled.

**THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN OR OTHER SUBJECTIVE SYMPTOMS**

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively

>  determined medical condition is of such a severity that it can be reasonably
>  expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

>  While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

>  It is established in this circuit that if the Secretary fails to articulate reasons
>  for refusing to credit a claimant's subjective pain testimony, then the
>  Secretary, as a matter of law, has accepted that testimony as true. Implicit
>  in this rule is the requirement that such articulation of reasons by the
>  Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

**THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED**

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited.

Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id.

## DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "lupus with pericarditis and hypertension," and stated that the "medical evidence of record shows the claimant has a history of being diagnosed with systemic lupus erythematosus, pericarditis and rheumatoid arthritis." [R. 20]. However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ." [R. 22]. The ALJ concluded

7

under step five of the sequential evaluation that the plaintiff can perform other work that exists in significant numbers in the national economy and is, therefore, not disabled.

The ALJ explicitly found plaintiff met the Eleventh Circuit pain standard: "the claimant's medically determined impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [R. 24]. The ALJ based his credibility finding on assumptions he made regarding the plaintiff's motivation:

> She has not tried to work since [her former employer] moved out of state. The claimant had a good work record and never quit due to any disability. The company she worked for was moving to Augusta, GA and she was offered a transfer but she refused to move with the company. She found herself out of work and drew unemployment benefits until they were exhausted. She said that she received a retirement settlement for her 18-19 years on the job and also drew out her 401K retirement fund. In the short term, it appears that she had little motivation for working. She stated that she never registered with job service and never went to vocational rehabilitation to see if she could be trained or placed into another job. When plants relocate out of state, usually several incentives for training or other work are offered. The undersigned believes that there are jobs (opportunities) this 41 year old can do in spite of her impairments, such as the jobs enumerated by the vocational expert. She should be able to work at a light job for 8 hours per day. She is not totally disabled from working.

[R. 25-26]. The speculative reasons articulated by the ALJ in rejecting the plaintiff's pain testimony are not supported by substantial evidence.

Physical Capacities Evaluations from the plaintiff's treating physicians indicate that the plaintiff is not able to work a full eight-hour day. On March 14, 2006, W. S. Pennington, M.D., completed such an evaluation, wherein he stated that the

plaintiff could sit for three hours, stand for one hour, and walk for one hour, for a total of five hours out of an eight-hour workday.  [R. 309].  Dr. Pennington's opinion was that, based on his treatment of the plaintiff, he believed that she would be expected to miss in excess of 25 to 30 days of work annually as a result of her underlying medical condition.  [R. 310].  On February 20, 2007, Yassin Mohamed, M.D., opined that the plaintiff would be able to sit for three hours, stand for one hour, and walk for one hour, again for a total of five hours out of an eight-hour workday.  [R. 351].

      The ALJ dismissed the opinion of Dr. Mohamed, which is essentially identical to that of Dr. Pennington, stating he "did not concur with the medical source statement by Dr. Mohamed."  [R. 22].  "The undersigned is convinced that she can work 8 hours per day and she can do [that] on a consistent basis, except for when she is experiencing a rare flare-up in her Lupus."  [Id.].  This conclusion[1] is not supported by substantial evidence, but is based his decision on the ALJ's unstated reasons or hunches.  Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

---

[1] The ALJ gave significant weight to the opinion of S. Aggarwal, M.D., the Commissioner's consulting examiner. [R. 24].  On April 13, 2007, Dr. Aggarwal completed a Medical Source Opinion (Physical), wherein he estimated the plaintiff would be able to stand for 30 minutes at one time for a total of two to three hours, walk for 15 minutes at one time for a total of one hour, and sit for 40 minutes at one time for a total of four hours, for a total of seven to eight hours in an eight-hour day. [R. 346].  Dr. Aggarwal's diagnostic impression was "Lupus with Pericarditis, a type of chest wall pain," which the plaintiff reported as "10/10 currently, and at its worse a 10/10." [R. 343-345].  Dr. Aggarwal stated that the plaintiff "should continue following her physician for her condition." [R. 345].

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).
> . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original). The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). It follows that the opinions of the plaintiff's treating physicians, Drs. Pennington and Mohamed, must be taken as true.

At the hearing, Karen Vessell, a vocational expert, testified that a hypothetical individual with the plaintiff's limitations could not perform her past relevant work. [R. 394-395]. The ALJ continued his examination:

> Q: Are there other jobs such an individual could perform that exist in significant numbers in the national economy?
>
> A: Yes, Your Honor. There would be jobs such as a [sic] office helper, DOT 239.567-010, it's light unskilled, approximately 2,000 in the state and 120,000 in the nation; a survey worker, DOT 205.367-054, light unskilled, approximately 1,200 in the state and 68,000 in the nation; a furniture rental clerk, DOT 295.357-018, light unskilled, approximately 1,800 in the state and 97,000 in the nation.
>
> Q: Okay. How many days in a typical month could an individual miss work and still maintain employment in these types of jobs?
>
> A: One to two days, usually one day in a [sic] unskilled job, and up to two days in a more semiskilled or skilled job.

> Q: Okay. But these are, these are unskilled jobs, so –
>
> A: So, so usually not more than one, one day. Occasionally some employers will allow two.
>
> Q: Okay. We do have a, a, a medical source statement from Dr. Mohammed [sic], and he's indicated that the Claimant can occasionally lift up to 20 pounds. But he's indicated, during an eight-hour work day, the Claimant could only work five hours a day. If, if an individual could only work five hours a day, would there be significant numbers of, of jobs in the national economy?
>
> A: No, Your Honor. That's not full-time competitive employment.

[R. 395-396]. The plaintiff's attorney continued the examination of Ms. Vessell:

> Q: Dr. Aggerol's [sic] medical source opinion, he lists seven to eight hours a day. If you add them up, you get the ability to stand or walk two to three, so I guess your answer would be the same if it was less than three standing or – can that – related to less than eight hours a day –
>
> A: Um-hum.
>
> Q: – there wouldn't be any jobs, correct?
>
> A: Probably not, no.

[R. 396]. Because the testimony of the plaintiff's treating physicians, Drs. Pennington and Mohamed, must be accepted as true, the plaintiff is limited to working five hours per day, which the VE testified is not full-time competitive employment.[2]

---

[2] Construing the testimony of the Commissioner's consulting examiner, Dr. Aggarwal, to mean that the plaintiff could not work a full eight-hour day, the VE's testimony was the same.

11

**CONCLUSION**

For the reasons set forth above, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 23 February 2009.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.